1  JAMES A. MARISSEN (SBN: 257699)
   jmarissen@grsm.com
2  RACHEL A. WEITZMAN (SBN: 307076)
   rweitzman@grsm.com
3  GORDON REES SCULLY MANSUKHANI, LLP
   2211 Michelson Drive, Suite 400
4  Irvine, CA 92612
   Telephone: (949) 255-6996
5  Facsimile: (949) 474-2060

6  Attorneys for Plaintiff
   YANG MING MARINE TRANSPORT CORP.
7

8             UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

| 11 | YANG MING MARINE TRANSPORT CORP., a foreign corporation, | CASE NO. |
|---|---|---|
| 12 | | |
| 13 | Plaintiff, | **COMPLAINT** |
| 14 | vs. | |
| 15 | CGL COHESION GLOBAL LOGISTICS, LLC, a foreign corporation; KARGO TRANSPORTATION, INC., a California corporation, and DOES 1 through 10, inclusive, | |
| 16 | | |
| 17 | | |
| 18 | Defendants. | |

19

20       COMES NOW Plaintiff YANG MING MARINE TRANSPORT CORP.

21  ("YANG MING" or "Plaintiff"), and as its Complaint and causes of action against

22  Defendants CGL COHESION GLOBAL LOGISTICS, LLC ("CGL"), and

23  KARGO TRANSPORTATION, INC. ("KARGO") (collectively "Defendants")

24  alleges upon information and belief as follows:

25              **JURISDICTION AND VENUE**

26       1.   This is a maritime claim for breach of contract pursuant to ocean bills

27  of lading, as well as equitable indemnity and contribution, related to the ocean

28  / / /

-1-
COMPLAINT

1 carriage of cargo, which comprises an admiralty and maritime claim pursuant to
2 Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333(1).
3     2.    In the alternative, as there is complete diversity between Plaintiff and
4 Defendants and the amount in controversy exceeds jurisdictional amount set by 28
5 U.S.C. § 1332, the prerequisites for diversity jurisdiction under 28 U.S.C.
6 § 1441(b) are met and this Court is vested with subject matter jurisdiction over
7 this action.
8     3.    Venue is proper in this Court under 28 U.S.C. § 1391(b) and (c) in
9 that Defendants' places of business are within the judicial district of this Court,
10 and they reside within the judicial district of this Court. Moreover, the
11 transactions that form the basis for the subject contracts for ocean carriage
12 occurred within the judicial district of this Court.

## PARTIES

13
14     4.    Plaintiff YANG MING is and was at all material times a foreign
15 corporation duly organized under the laws of Taiwan, with a principal place of
16 business located at 271 Ming De 1st Road, Cidu District, Keelung 20646, Taiwan.
17     5.    At all material times Defendant CGL COHESION GLOBAL
18 LOGISTICS LLC was a corporation duly organized and existing under the laws of
19 New York. At all material times Defendant CGL was, and is, doing business
20 within the Court's jurisdiction and has a registered address at 10012 Norwalk
21 Boulevard, Suite 110, Santa Fe Springs, California 90670.
22     6.    At all material times Defendant KARGO TRANSPORTATION,
23 INC. was a corporation duly organized and existing under the laws of California.
24 At all material times Defendant KARGO was, and is, doing business within the
25 Court's jurisdiction and has a registered address at 2930 Vail Ave., City of
26 Commerce, California 90040.
27     7.    Plaintiff is informed, believes and thereon alleges, that at all material
28 times, each of the Defendant Does 1 through 10 were responsible in some manner

Gordon Rees Scully Mansukhani, LLP
2211 Michelson Drive, Suite 400
Irvine, CA 92612

-2-
COMPLAINT

for the occurrences, losses and/or damages alleged in this Complaint. Their names and capacities are currently unknown to Plaintiff. Plaintiff will amend this Complaint to show such true names and capacities when the same have been ascertained.

## FACTUAL BACKGROUND

8. Plaintiff YANG MING was, at all material times, an ocean transportation common carrier doing business in the United States with authority from the Federal Maritime Commission ("the FMC").

9. On or about September 2016, Changzhou Woyuan Textiles Co. Ltd. ("WOYUAN") entered into a sale contract with Fabric Avenue, Inc. ("FABRIC") to purchase denim fabric (the "Cargo").

10. Pursuant to the sale contract between WOYUAN and FABRIC, the Cargo was loaded into container no. YMMU4083612 (the "Container").

11. Pursuant to the sale contract between WOYUAN and FABRIC, WOYUAN contracted with Cohesion Freight (HK) Ltd ("COHESION") to ship the Container from Shanghai, China to Los Angeles, United States.

12. COHESION was, at all material times, a Non-Vessel Owning Common Carrier ("NVOCC").

13. As an NVOCC, COHESION issued its own bill of lading for the shipment of the Container (the "Cohesion House Bill") which named WOYUAN as the shipper and FABRIC as the consignee. The Cohesion House Bill was required to be surrendered into order to obtain delivery of the Container. The Cohesion House Bill also specified that FABRIC was required to contact Defendant CGL for delivery of the Container in Los Angeles.

14. COHESION in turn contracted with YANG MING to perform the actual ocean transportation of the Container from the Port of Shanghai, China to the Port of Los Angeles, California.

15. YANG MING issued a Non-Negotiable Sea Waybill no. YMLUW231643253 dated September 28, 2016 (the "YM Master Bill") for the shipment of the Container. The YM Master Bill named COHESION as the shipper and Defendant "CGL COHESION GLOBAL LOGISTICS, LLC" as the consignee. The YM Master Bill also indicated that the freight was pre-paid.

16. Defendant CGL was, at all material times, an ocean freight forwarder doing business in the United States with licensing from, and bonding with, the FMC. The bond Defendant CGL maintains with the FMC is $50,000 for freight forwarder business activities and is intended to compensate the public at-large, including YANG MING, for any loss and damage arising from Defendant CGL's freight forwarder business activities.

17. On or about September 28, 2016, the Container was loaded aboard the vessel M/V *YM Vancouver* (the "Vessel") in the Port of Shanghai, China.

18. On or about October 3, 2016, and as is customary practice in the United States, YANG MING sent an "Arrival Notice" to Defendant CGL, being the named consignee under the YM Master Bill, notifying Defendant CGL of the Container's anticipated arrival date in the Port of Los Angeles, California, being October 10, 2016. YANG MING did not send an "Arrival Notice" to any other entity.

19. Defendant CGL subsequently provided FABRIC with notification of the Container's anticipated arrival date in the Port of Los Angeles, California, being October 10, 2016.

20. After receiving the Arrival Notice, Defendant CGL, being the named consignee under the YM Master Bill, could start making arrangements for the collection of the Container from West Basin Container Terminal in the Port of Los Angeles. Specifically, Defendant CGL, or its authorized agent, as a registered user, was required to access the West Basin Container Terminal's automated system and schedule a pick-up appointment to collect the Container.

21. On or about October 10, 2016, the Vessel arrived in the Port of Los Angeles, California and the Container was discharged from the Vessel at the West Basin Container Terminal.

22. Given that the ocean freight was prepaid to YANG MING under the YM Master Bill, and considering that the YM Master Bill did not need to be surrendered in order for Defendant CGL to collect the Container, YANG MING did not place a release "hold" on the Container. Specifically, in the West Basin Container Terminal's automated system YANG MING indicated that the Container was "Released." As such, the Container was otherwise available for Defendant CGL and/or its agents to collect.

23. Although not known at the time, Plaintiff was later informed that freight under the Cohesion House Bill was to be collected by Defendant CGL from FABRIC in Los Angeles before the Container was released from the West Basin Container Terminal and/or Defendant CGL's posession. At no material time did Defendant CGL, or any other entity, request YANG MING place a release "hold" on the Container and/or otherwise update the West Basin Container Terminal's automated system to indicate that there was a freight release "hold" on the release of the Container.

24. Although not known at the time, Plaintiff was later informed that there were payment disputes between WOYUAN and FABRIC, including under the sale contract in relation to the Cargo in the Container, specifically being that FABRIC had not paid WOYUAN for the Cargo in the Container. Defendant CGL, or its servant and agents, knew, or should have known, about these payment disputes. Despite actual or constructive knowledge of these payment disputes between WOYUAN and FABRIC, at no material time did Defendant CGL, or any other entity, request YANG MING place a release "hold" on the Container and/or otherwise update the West Basin Container Terminal's automated system to indicate that there was a miscellaneous "hold" on the release of the Container.

25. Defendant CGL, or its servant and agents, knew, or should have known, that WOYUAN still held the original Cohesion House Bill when the Container arrived in the port of Los Angeles. Despite actual or constructive knowledge of WOYUAN still holding the original Cohesion House Bill, at no material time did Defendant CGL, or any other entity, request YANG MING place a release "hold" on the Container and/or otherwise update the West Basin Container Terminal's automated system to indicate that there was a miscellaneous "hold" on the release of the Container.

26. At all material times the original Cohesion House Bill was required to be surrendered to Defendant CGL in order to obtain delivery of the Container from Defendant CGL. Despite knowledge of this requirement, at no material time did Defendant CGL, or any other entity, request YANG MING place a release "hold" on the Container and/or otherwise update the West Basin Container Terminal's automated system to indicate that there was a miscellaneous "hold" on the release of the Container.

27. On or about October 10, 2016, a trucker "Delivery Order" on Defendant CGL's letterhead was issued for the collection of the Container from the West Basin Container Terminal (the "Delivery Order"). The Delivery Order was conveyed from FABRIC, being the consignee under the Cohesion House Bill, to the trucker, Defendant KARGO, and it requested Defendant KARGO to collect the Container and deliver it to FABRIC.

28. Although the Delivery Order was on Defendant CGL's letterhead, it was prepared by FABRIC. While the Delivery Order was prepared by FABRIC and not Defendant CGL, Defendant CGL knew, or should have known, that FABRIC would prepare and issue the Delivery Order on Defendant CGL's letterhead for the Container based upon the parties' prior course of dealings in which FABRIC had previously prepared and issued delivery orders to truckers on

Defendant CGL's letterhead to obtain delivery of cargo, all with Defendant CGL's express knowledge, consent and/or subsequent ratification.

29. At all material times Defendant CGL knew, or should have known, of FABRIC's propensity to prepare and issue delivery orders to truckers on Defendant CGL's letterhead to obtain delivery of cargo. Despite actual or constructive knowledge of FABRIC's propensity to prepare and issue delivery orders to truckers on Defendant CGL's letterhead to obtain delivery of cargo, at no material time did Defendant CGL take any action to stop FABRIC's conduct and/or to request YANG MING place a release "hold" on the Container and/or otherwise update the West Basin Container Terminal's automated system to indicate that there was a miscellaneous "hold" on the release of the Container.

30. At no time after receipt of the Delivery Order did the trucker, Defendant KARGO, check or otherwise confirm with Defendant CGL that the Delivery Order was authentic.

31. After receipt of the Delivery Order Defendant KARGO knew, or should have known, that the Delivery Order was not authentic as (a) Defendant KARGO received the Delivery Order from FABRIC and not Defendant CGL, (b) the weight and quantity of the Cargo specified in the Delivery Order was different from the weight and quantity specified in the YM Master Bill and other shipping documents, and (c) the Delivery Order was not signed or otherwise endorsed by Defendant CGL.

32. On or about October 14, 2016, the time allowed under YANG MING's applicable tariff for Defendant CGL, being the named consignee under the YM Master Bill, to collect the Container expired. At no time between when the Container arrived on October 10, 2016 and the expiry of time under the applicable tariff on October 14, 2016, did Defendant CGL personally collect the Container or inform YANG MING that it should place a release "hold" on the Container.

33. Five days after the expiration of the allowable time under YANG MING's applicable tariff, on or about October 19, 2016, Defendant KARGO used the Delivery Order to schedule and collect the Container from the West Basin Container Terminal.

34. On or about October 19, 2016, Defendant KARGO delivered the Container to FABRIC.

35. At no time between receipt of the Delivery Order on October 10, 2016 and the collection of the Container on October 19, 2016, did Defendant KARGO check or otherwise confirm with Defendant CGL that the Delivery Order was authentic.

36. On or about October 20, 2016, Defendant KARGO returned to the empty Container to the West Basin Container Terminal.

37. On or about October 21, 2016, FABRIC informed Defendant CGL that it had prepared and issued the Delivery Order to take possession of the Cargo in the Container.  Upon receipt of this information from FABRIC, Defendant CGL failed to: (a) confirm with WOYUAN whether FABRIC had actually paid for the Cargo, (b) confirm with WOYUAN whether WOYUAN still held the original Cohesion House Bill, (c) take any action to have the Delivery Order prepared by FABRIC declared invalid and/or void *ab initio*, (d) take any action to arrest, attach and/or retrieve the Cargo until its true ownership was established, (e) commence any legal proceedings against FABRIC for declaratory or injunctive relief regarding the Delivery Order and/or FABRIC taking possession of the Cargo, and/or (f) notify any state or federal law enforcement agency or any other party, include YANG MING, that FABRIC had taken possession of the Cargo in circumstances where FABRIC had not surrendered the original Cohesion House Bill, had not paid for the Cargo, and/or did not have WOYUAN's permission to take the Cargo.

38. On June 9, 2017, FABRIC filed for Chapter 11 bankruptcy protection in California.

39. In or about June 2017, WOYUAN commenced proceedings in Shanghai, China against COHESION for the damages for the misdelivery of the Cargo to FABRIC without surrender of the original Cohesion House Bill, which was still in WOYUAN's possession. A judgment was issued against COHESION in favor WOYUAN in that action.

40. COHESION subsequently commenced proceedings in Shanghai, China against YANG MING for indemnification in relation to WOYUAN's judgment. YANG MING was ultimately ordered to indemnify COHESION for CNY458,913.70 (equivalent to US$68,138.63 as of May 1, 2019).

41. YANG MING is informed, believes and thereon alleges that the damage sustained to WOYUAN, which YANG MING was required to pay through indemnification of COHESION, was not based on the acts or omissions of YANG MING, but was due solely to the acts, omissions, fault, negligence, misconduct or other actionable activity of Defendants CGL and KARGO.

## FIRST CAUSE OF ACTION

(Equitable Indemnification)

42. YANG MING realleges and incorporates by reference paragraphs 1 through 41 inclusive of its Complaint.

43. YANG MING is in no way responsible for the losses or damages which WOYUAN alleged against COHESION and/or for which COHESION sought and obtained indemnification from YANG MING. Rather it was the acts, omissions, fault, negligence, misconduct or other actionable activity of Defendants CGL and KARGO which caused the losses or damages which WOYUAN alleged against COHESION and/or for which COHESION sought and obtained indemnification from YANG MING being: (a) Defendant CGL's failure to (i) place a "hold" on the release of the Container, (ii) take steps to stop FABRIC's

propensity to prepare and issue delivery orders to truckers on Defendant CGL's letterhead to obtain delivery of cargo and/or otherwise secure its delivery orders, (iii) timely collect the Container itself within the time specified in YANG MING's applicable tariff, and/or (iv) take any action whatsoever after learning that FABRIC had taken possession of the Cargo in circumstances where FABRIC had not surrendered the original Cohesion House Bill, had not paid for the Cargo, and/or did not have WOYUAN's permission to take the Cargo; and (b) Defendant KARGO's failure to check or otherwise confirm with Defendant CGL that the Delivery Order was authentic in circumstances where Defendant KARGO knew, or ought to have known, the Delivery Order was not authentic.

44. As YANG MING was found liable for damages totaling CNY458,913.70 (equivalent to US$68,138.63 as of May 1, 2019), YANG MING now alleges that the acts, omissions, fault, negligence, misconduct or other actionable activity of Defendants CGL and KARGO as described herein was active, primary, and affirmative, and that any negligent or other actionable conduct or activity on the part of YANG MING, if any, was at most only passive, derivative, and secondary.

45. Accordingly, YANG MING is entitled to total or partial indemnification from Defendants CGL and KARGO such that YANG MING can recoup from and be reimbursed by Defendants CGL and KARGO all sums that YANG MING paid to COHESION, being any sum in excess of YANG MING's proportionate share of liability, if any.

46. As a direct, legal and proximate result of the acts, omissions, fault, negligence, misconduct or other actionable activity of Defendants CGL and KARGO as described herein, YANG MING has incurred and paid expenses for its defense of COHESION's indemnification action including, without limitation, attorneys' fees, court costs, expenses, and damages which are currently estimated

to be around US$35,000. YANG MING will also incur future attorney's fees, court costs, expenses and damages throughout the pendency of this action.

47. Based on the foregoing, YANG MING is entitled to be indemnified and held harmless by Defendants CGL and KARGO for YANG MING's attorneys' fees, court costs, expenses, and damages that YANG MING has paid or incurred as a direct, legal and proximate result of the acts, omissions, fault, negligence, misconduct or other actionable activity of Defendants CGL and KARGO as described herein. The above expenses are continuing and in an amount presently unknown to YANG MING. Accordingly, YANG MING prays for leave to amend this Complaint to assert the true amount of such expenses when YANG MING has ascertained the same.

## SECOND CAUSE OF ACTION
(Contractual Indemnification)

48. YANG MING realleges and incorporates by reference paragraphs 1 through 47 inclusive of its Complaint.

49. Under the YM Master Bill, Defendant CGL was required to collect the Container within the time provided for in YANG MING's applicable tariff.

50. Under the applicable tariff, Defendant CGL was required to collect the Container within 4 days.

51. By failing to collect the Container within 4 days itself, Defendant CGL allowed FABRIC time to prepare and issue the Delivery Order on Defendant CGL's letterhead to take possession of the Container, all in circumstances where FABRIC had not surrendered the original Cohesion House Bill, had not paid for the Cargo and/or did not have WOYUAN's permission to take the Cargo.

52. By breaching the terms of the YM Master Bill, YANG MING is entitled to total contractual indemnification from Defendant CGL so that YANG MING can recoup from and be reimbursed by Defendant CGL all sums that YANG MING paid to COHESION.

53. As YANG MING was found liable for damages totaling CNY458,913.70 (equivalent to US$68,138.63 as of May 1, 2019), YANG MING now alleges that the acts, omissions, fault, negligence, misconduct or other actionable activity of Defendants CGL and KARGO as described herein was active, primary, and affirmative, and that any negligent or other actionable conduct or activity on the part of YANG MING, if any, was at most only passive, derivative, and secondary.

54. As a direct, legal and proximate result of Defendant CGL's breach of the YM Master Bill, YANG MING has incurred and paid expenses for its defense of COHESION's indemnification action including, without limitation, attorneys' fees, court costs, expenses, and damages which are currently estimated to be around US$35,000. YANG MING will also incur future attorney's fees, court costs, expenses and damages throughout the pendency of this action.

55. Based on the foregoing, YANG MING is entitled to be indemnified and held harmless by Defendants CGL and KARGO for YANG MING's attorneys' fees, court costs, expenses, and damages that YANG MING has paid or incurred. The above expenses are continuing and in an amount presently unknown to YANG MING. Accordingly, YANG MING prays for leave to amend this Complaint to assert the true amount of such expenses when YANG MING has ascertained the same.

### THIRD CAUSE OF ACTION

(Contribution)

56. YANG MING realleges and incorporates by reference paragraphs 1 through 55 inclusive of its Complaint.

57. YANG MING is informed and believes and thereon alleges that it is in no way responsible for the losses or damages which WOYUAN alleged against COHESION and for which COHESION sought and obtained indemnification from YANG MING. Rather YANG MING is informed and believes, and thereon

alleges, that it was the acts, omissions, fault, negligence, misconduct or other actionable activity of Defendants CGL and KARGO which caused the losses or damages which WOYUAN alleged against COHESION and/or for which COHESION sought and obtained indemnification from YANG MING being: (a) Defendant CGL's failure to (i) place a "hold" on the release of the Container, (ii) take steps to stop FABRIC's propensity to prepare and issue delivery orders to truckers on Defendant CGL's letterhead to obtain delivery of cargo and/or otherwise secure its delivery orders, (iii) timely collect the Container itself within the time specified in YANG MING's applicable tariff, and/or (iv) take any action whatsoever after learning that FABRIC had taken possession of the Cargo in circumstances where FABRIC had not surrendered the original Cohesion House Bill, had not paid for the Cargo, and/or did not have WOYUAN's permission to take the Cargo; and (b) Defendant KARGO's failure to check or otherwise confirm with Defendant CGL that the Delivery Order was authentic in circumstances where Defendant KARGO knew, or ought to have known, the Delivery Order was not authentic.

58.     As YANG MING was found liable for damages totaling CNY458,913.70 (equivalent to US$68,138.63 as of May 1, 2019), YANG MING now alleges that the acts, omissions, fault, negligence, misconduct or other actionable activity of Defendants CGL and KARGO was a substantial factor in causing the losses or damages which WOYUAN alleged against COHESION and/or for which COHESION sought indemnification from YANG MING.

59.     Based on the foregoing allegations, YANG MING will be damaged to the extent that it must pay any sums over its proportionate share of liability, if any, as the trier of fact may assess.

60.     Accordingly, YANG MING is entitled to contribution from Defendants CGL and KARGO in proportion to their share of liability, so that YANG MING can recoup from and be reimbursed by Defendants CGL and

KARGO all sums that YANG MING paid to COHESION, being any sum in excess of YANG MING's proportionate share of liability, if any.

61. As a direct, legal and proximate result of the acts, omissions, fault, negligence, misconduct or other actionable activity of Defendants CGL and KARGO as described herein, YANG MING has incurred and paid expenses for its defense of COHESION's indemnification action including, without limitation, attorneys' fees, court costs, expenses, and damages which are currently estimated to be around US$35,000. YANG MING will also incur future attorney's fees, court costs, expenses and damages throughout the pendency of this action.

62. Based on the foregoing, YANG MING is entitled to contribution from Defendants CGL and KARGO for YANG MING's attorneys' fees, court costs, expenses, and damages that YANG MING has paid or incurred as a direct, legal and proximate result of the acts, omissions, fault, negligence, misconduct or other actionable activity of Defendants CGL and KARGO as described herein. The above expenses are continuing and in an amount presently unknown to YANG MING. Accordingly, YANG MING prays for leave to amend this Complaint to assert the true amount of such expenses when YANG MING has ascertained the same.

## **PRAYER FOR RELIEF**

WHEREFORE, YANG MING prays for judgment on its Complaint as follows:

1. For equitable indemnity from Defendants CGL and KARGO for all costs, fees, expenses, liability, damages, and sums including $103,138.63 in damages and costs YANG MING was required to pay COHESION (comprised of CNY458,913.70 (equivalent to US$68,138.63 as of May 1, 2019), together with legal defense costs of US$35,000), and all costs and fees that YANG MING incurs or has incurred in this action, in excess of YANG MING's proportionate share of liability, if any;

COMPLAINT

2.	For contractual indemnity from Defendant CGL for all costs, fees, expenses, liability, damages, and sums including $103,138.63 in damages and costs YANG MING was required to pay COHESION (comprised of CNY458,913.70 (equivalent to US$68,138.63 as of May 1, 2019), together with legal defense costs of US$35,000), and all costs and fees that YANG MING incurs or has incurred in this action;

3.	For contribution from Defendants CGL and KARGO or all costs, fees, expenses, liability, damages, and sums including $103,138.63 in damages and costs YANG MING was required to pay COHESION (comprised of CNY458,913.70 (equivalent to US$68,138.63 as of May 1, 2019), together with legal defense costs of US$35,000), and all costs and fees that YANG MING incurs or has incurred in this action, in excess of YANG MING's proportionate share of liability, if any;

4.	For prejudgment interest as permitted by law;

5.	For all costs of suit herein as permitted by law;

6.	For reasonable attorney's fees incurred as permitted by law; and

7.	For such other and further relief as the Court deems just and proper.

Dated: May 1, 2019

GORDON REES SCULLY MANSUKHANI, LLP

By: /s/ *James A. Marissen*
James A. Marissen
Rachel A. Weitzman
Attorneys for Plaintiff
YANG MING MARINE TRANSPORT CORP.